UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MELODIE A. JONES,

        Plaintiff,

v.                               ACTION NO. 2:04cv304

JO ANNE BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Melodie A. Jones ("Jones"), brought this pro se action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits and supplemental security income benefits under the Social Security Act (the "Act").

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) by order of reference filed August 13, 2004.

## I. PROCEDURAL BACKGROUND

On March 11, 2002, Jones filed applications for disability insurance benefits and for supplemental security income alleging an onset of disability as of November 29, 1999, due to diabetes mellitus, anemia and a bone infection in her foot. (R.[1] 21, 102.)

---

[1]"R." refers to the transcript of the administrative record of proceedings relating to this case.

Jones' application was denied by the Social Security Administration initially on September 18, 2002 (R. 20, 53-54), and on reconsideration on January 20, 2003.  (R. 20, 57-59.)

On February 12, 2003, Jones requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration, which was held on May 13, 2003.  (R. 20-28, 60.) Jones was represented at the hearing by her attorney, Barrett R. Richardson.  (R. 20, 234.)  Jones and independent vocational expert, Herman Bates, testified at the hearing.  (R. 20.)

On August 19, 2003, the ALJ issued a decision.[2]  (R. 17-28.) The ALJ found Jones was not entitled to disability insurance benefits and was not eligible for supplemental security income payments because she "retain[ed] the capacity for work that exists in significant numbers in the national economy" and was not under a disability as defined in the Act.  (R. 26.)  The ALJ determined that the medical evidence showed Jones had diabetes mellitus, peripheral neuropathy and obesity.[3]  (R. 22.)  The ALJ found that

---

[2]The ALJ noted that Jones had filed a previous application for benefits on January 21, 2000, which was denied at the ALJ hearing level on March 28, 2001 but not appealed by Jones.  (R. 20.)  The ALJ also determined that the evidence in the record did not provide any basis to reopen the previous hearing decision.  (R. 20.)  The ALJ therefore found that the period up to and including March 28, 2001 was "barred from consideration by the doctrine of res judicata."  (R. 20-21.)  The Court notes that Plaintiff has not challenged this finding. Consequently, the period at issue here commences on March 29, 2001.

[3]The ALJ noted that obesity is not listed as one of the impairments in Appendix 1 of the Regulations, and that, in any

Jones has not worked since February 8, 2002, the date she claims to have been fired for poor performance. (R. 22, 239.) The ALJ nevertheless found Jones had the residual functional capacity ("RFC") to perform a significant range of sedentary work with some limitations. (R. 24.) Specifically, the ALJ found that Jones had the RFC to lift and carry ten pounds occasionally and five pounds more frequently, that she "can sit for eight hours, walk short distances at a time, and stand for brief periods for up to two hours a day," but should "avoid work around dangerous machinery" and "cannot operate foot controls."[4] (R. 24, 26.) The ALJ also found that while Jones is unable to return to her former employment as a supply clerk and supply technician, jobs which required lifting in excess of ten pounds and prolonged standing and walking, she is able to make an adjustment to other work that exists in significant numbers in the national economy. (R. 21, 25-26.) On or about October 16, 2003, Jones requested review of the ALJ's decision by the Appeals Council of the Office of Hearings and

---

event, the record did not indicate that Jones' weight (recorded as 245 pounds on a sixty-nine inch frame on August 29, 2002) "results in a loss of functioning to a degree that would meet or equal any listed impairment [in the Regulations]." (R. 22.) Also, the ALJ found that Jones' anemia was attributable to "gynecological problems," but the medical record did not support any claims that either disorder "imposed any limitations for at least 12 months." (R. 22.) The Court notes that nothing in the record indicates either condition would adversely impact Plaintiff's ability to do sedentary work, which is what the ALJ found she could perform.

[4]This is consistent with the definition of sedentary work. See 20 C.F.R. § 417.967(a); Soc. Sec. Ruling 83-10.

Administration ("Appeals Council").[5]   (R. 13-16.)   The Appeals

Council denied Jones' request for review on February 18, 2004,

stating that it found no reason to review the ALJ's decision.  (R.

5-8.)  This makes the ALJ's decision the "final decision" of the

Commissioner subject to judicial review here, pursuant to 42 U.S.C.

§ 405(g).  20 C.F.R. §§ 404.981, 416.1481.

Jones brought this action seeking judicial review of the

decision of the Commissioner denying her claim for disability

insurance benefits and supplemental security income.[6]  Jones filed

---

[5]With the request, in a statement dated October 14, 2003,
Jones made reference to new evidence not previously submitted to
the ALJ, and she requested a time extension, ostensibly to allow
her time to gather that information.  (R. 16.)  Jones also
requested a copy of the "oral evidence from my hearing on
05/13/03."  (R. 14.)  The Appeals Council, in a December 2, 2003
letter to Jones, indicated it would provide Jones with a duplicate
cassette of the hearing transcript (but not a written transcript),
and deferred any further action in the case for thirty days.  (R.
12.)  Jones submitted the additional evidence, discussed infra, in
two separate facsimiles, dated December 31, 2003 and January 1,
2004.  (R. 10-11, 223-233.)  The Appeals Council issued an Order on
February 18, 2004, noting that it received the additional evidence
after the ALJ hearing and it was made part of the record.  (R. 9.)

[6]In her Motion for Summary Judgment Order filed December 15,
2004, infra, Jones states that she filed another application for
disability benefits in September 2003, and that on February 28,
2004 she was "granted social security disability and supplemental
security income for a period of disability beginning August 20,
2003."  Pl.'s Mem. at 1.  Defendant properly notes there are no
documents in the record to substantiate this claim, but concedes
that "Agency computer records" confirm Jones was found disabled on
or about September 8, 2003 from a later application (the reason for
the disability finding is unknown).  Def.'s Mem. at 4.  Assuming
this is true, that decision is not pertinent here insofar as it
came after the ALJ's decision of August 18, 2003 and after the
Appeals Council denied review of Jones' claim on February 18, 2004.

a pro se complaint on May 19, 2004, which Defendant answered on July 26, 2004.[7]  Jones filed a motion for summary judgment with a memorandum in support on December 15, 2004.[8]  Defendant filed a motion for summary judgment and in opposition to Jones' motion for summary judgment with a memorandum in support on January 14, 2005. Jones filed a response to Defendant's motion for summary judgment on March 16, 2005.[9]  As neither party in this case has indicated

---

[7]Defendant moved for an Order permanently sealing the administrative record, which was unopposed.  The Court issued its Order granting the motion on August 13, 2004.

[8]The parties were granted two separate extensions of time to file the summary judgment papers, upon Plaintiff's motion, by the undersigned Magistrate Judge's Orders of October 5, 2004 and November 12, 2004, respectively.  The Court also notes that on December 23, 2004 Jones sought leave to amend the summary judgment motion filed on December 15, 2004. That motion was unopposed by Defendant, and insofar as the Court has considered the information presented in the motion, which appears to merely correct an obvious scrivener's error, the Court recommends that the motion be deemed GRANTED. See Plaintiff's Motion to Amend Summary Judgment Order and supporting memorandum, filed December 23, 2004.

[9]The response was actually due to be filed on March 15, 2005, according to the Court's Order of February 10, 2005, granting Jones' third request for an extension of time.  This defect was removed, however, by the Court's Order of May 2, 2005, which ordered the response filed by the Clerk of Court.  On March 16, 2005, Jones also filed a motion to amend her complaint and a motion seeking expert witness testimony, to which Defendant filed a reply on May 13, 2005 in accordance with the Court's Order of May 2, 2005.  Jones' motion to amend the complaint seeks to include a request to recover Plaintiff's costs incurred pursuant to 31 C.F.R. § 1304(a)(3)(A).  See Plaintiff's Motion to Amend Complaint and Relief Order.  That motion was unopposed by Defendant who noted: "any award of costs are subject to applicable statutes . . ., and [the] issue is moot until plaintiff has a 'favorable' decision." See Defendant's Response to Plaintiff's Motion for Expert Witness Testimony and Plaintiff's Motion to Amend Complaint and Relief Order at 2.  The Court concurs with Defendant, except to note the

special circumstances requiring oral argument in this matter, the case is deemed submitted for decision based on the memoranda.

## II. <u>FACTUAL BACKGROUND</u>

Jones was a forty-one year old woman at the time of the hearing; she is presently forty-three. (R. 21, 237.) Jones has a high school education, completed two years of college and received an AAS in secretarial science. (R. 21, 238.) Jones lives alone and claims she cannot afford to pay for utilities or buy food and medicine regularly. (R. 24.) Her past relevant work experience includes supply clerk and supply technician for the United States Navy between 1981 through November 1999.[10] (R. 21, 240.) Jones also testified that she attempted to work as a telemarketer for approximately seven months, beginning in August 2001, but she was fired from that position on February 8, 2002 for poor performance. (R. 102, 239-40.) In her past work for the Navy, Jones was required to lift up to fifty pounds frequently, and up to sixty pounds on occasion; she also was required to wear safety shoes and perform "heavy lifting [of] staging material." (R. 103, 241.) She

---

motion is more properly characterized as being not ripe, instead of "moot," and, insofar as Plaintiff's motion to amend her complaint seeks relief for which she may be entitled by statute, the Court recommends that the motion be deemed GRANTED.

[10]The Court notes that in her disability application of March 11, 2002, Jones indicated that she worked for the Navy until 2000. (R. 103.) Though the record is unclear, the Court nevertheless assumes that Jones' employment with the Navy ended on November 29, 1999, which is coincident with her alleged onset of disability date. (R. 21, 103.)

also performed tasks requiring prolonged standing and walking (up to seven hours per day), as well as sitting, climbing and stooping/bending (up to three hours per day).  (R. 103.)

Jones alleged in her application for disability benefits that her physical impairments, diabetes, anemia and bone infection in her foot, first bothered her on November 29, 1999, and that she ultimately became unable to work on February 8, 2002.  (R. 102.) Jones has not worked since that date.  (R. 22, 239.)

### III. **PLAINTIFF'S PRO SE PLEADINGS**

A <u>pro se</u> litigant is entitled to a liberal reading of her pleadings.  <u>Jacobi v. Blocker</u>, 153 F.R.D. 84, 86 (E.D. Va. 1994). Moreover, the Court notes that "trial courts are encouraged to liberally treat procedural errors made by <u>pro se</u> litigants, especially when a technical or arcane procedural rule is involved." <u>Bauer v. Comm'r</u>, 97 F.3d 45, 49 (4th Cir. 1996).

> Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect <u>pro se</u> litigants from inadvertent forfeiture of important rights because of their lack of legal training.  While the right "does not exempt a party from compliance with relevant rules of procedural and substantive law," it should not be impaired by harsh application of technical rules.

<u>Traguth v. Zuck</u>, 710 F.2d 90, 95 (2d Cir. 1983).  It is with this principle in mind that the Court construes the various pleadings submitted by this <u>pro se</u> plaintiff.

## A. <u>Plaintiff's Motion for Expert Witness Testimony</u>

As a preliminary matter, Plaintiff has moved for the Court to allow expert witness testimony to "provide a simplified medical explanation in laymen's language of the evidence already in the record." <u>See</u> Plaintiff's Motion for Expert Witness Testimony at 1. The Court interprets this as a request for an evidentiary hearing.

As Defendant correctly notes, this Court has no jurisdiction to conduct evidentiary hearings under the Act. <u>See</u> 42 U.S.C. § 405(g) (federal court's exclusive jurisdiction to consider social security appeals, based "upon the pleadings and transcripts of the record," is limited to "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing"). <u>See also</u> <u>Mathews v. Weber</u>, 423 U.S. 261, 270 (1976) ("under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), neither party may put additional evidence before the district court"). As discussed <u>infra</u>, this Court's analysis is properly limited to whether the Commissioner's findings were supported by substantial evidence in the record, and whether the correct law was applied. Even if the Court desired expert testimony to explain the evidence in the record, which it does not, there simply is no basis on which the Court can do so.

Based on the foregoing, the Court FINDS that Plaintiff's motion for expert testimony would, if granted, impermissibly expand the record before the Court. As such, the Court recommends that

Plaintiff's motion be DENIED.

**B. <u>Pleadings Construed as a Motion for Prejudgment Remand</u>**

Plaintiff submitted her Motion for Summary Judgment with an exhibit attached, which was evidence not already entered into the administrative record. The exhibit was the consultative report of Dr. Grinkewitz, a podiatrist who was consulted to evaluate Plaintiff's diabetic foot ulcer on March 2, 2002, during her stay at Maryview Medical Center. In addition, Plaintiff had submitted several exhibits to the Appeals Council for review when she appealed the ALJ's decision. <u>See</u> note 5, <u>supra</u>.

The Court notes that sentence four of 42 U.S.C. § 405(g), <u>supra</u>, expressly limits the scope of the Court's review to the pleadings and the administrative record. The sixth sentence of § 405(g), however, provides for a prejudgment remand, "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." <u>Sullivan v. Finkelstein</u>, 496 U.S. 617, 626 & n.6 (1990). Therefore, to the extent that the exhibits attached to Plaintiff's <u>pro se</u> pleadings may constitute such new and material evidence not already entered into the administrative record, the Court will construe the pleadings as a motion for prejudgment remand.

Under the sixth sentence of § 405(g), the Court may remand a Social Security case and order additional evidence to be taken, but

only if: (1) the evidence is new; (2) the evidence is material; (3) there is good cause for the claimant's failure to submit the evidence during the administrative proceedings; and (4) the claimant presents "at least a general showing of the nature of the new evidence." Borders v. Heckler, 777 F. 2d 954, 955 (4th Cir. 1985); Brock v. Sec'y of Health & Human Servs., 807 F. Supp. 1248, 1250-51 & n.3 (S.D.W. Va. 1992). Evidence is new "if it is not duplicative or cumulative." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc); Rogers v. Barnhart, 204 F. Supp. 2d 885, 892 & n.1 (W.D.N.C. 2002). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins, 953 F.2d at 96; Rogers, 204 F. Supp. 2d at 892 & n.1. The new evidence must "relate to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). The evidence must concern whether the claimant was disabled during this relevant period of time. See Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987); Cox v. Heckler, 770 F.2d 411, 413 (4th Cir. 1985); Brock v. Heckler, 612 F. Supp. 1348, 1354 (D.S.C. 1985).

The Court FINDS that the exhibit of Dr. Grinkewitz's consultation report of March 2, 2002 concerning her diabetic foot ulcer is material evidence because it does bear on the condition of Plaintiff and her ability to work at the time the ALJ and Appeals Council rendered their decisions. The Court FINDS, however, that

the exhibit is <u>not</u> new evidence.   Even though the consultation report itself is not included as part of the records of her hospitalization from February 26, 2002 until March 7, 2002, the hospital discharge summary incorporates Dr. Grinkewitz's report and findings.   (R. 143-44.)   Accordingly, that information was available for review by the ALJ and the Appeals Council in rendering their decisions that Plaintiff was not disabled. Therefore, the Court FINDS that Plaintiff has failed to make a sufficient showing of new material evidence to justify a prejudgment remand.[11]

### C. <u>Pleadings Construed to State Claims Appropriate for Review</u>

The pleadings indicate Plaintiff's belief that the ALJ's determination that she is not disabled is not supported by substantial evidence.  The Court construes Plaintiff's pleadings to argue that: (1) the ALJ's RFC determination was in error because he failed to give appropriate weight to the medical opinion of her treating physician, Dr. Grinkewitz, he gave undue weight to the medical evaluations provided by the Disability Determination Services (DDS), and he failed to consider her foot deformities and

---

[11]The Court notes that because Plaintiff failed to show that the exhibit contained new <u>and</u> material evidence, the Court need not consider the third requirement of a prejudgment remand, whether good cause exists for Plaintiff's failure to submit the evidence during the administrative proceedings.   Insofar as the fourth requirement is concerned, the Court notes that the exhibits themselves appear to be adequate as a general showing of the nature of the evidence.

thereby did not consider all of her impairments; (2) the ALJ failed to properly assess her credibility or give appropriate credit to her testimony and complaints of pain; (3) the Appeals Council failed to consider additional evidence submitted by Plaintiff that indicated a worsening of her condition; and (4) the hypothetical question posed to the Vocational Expert by the ALJ was not based on all of Plaintiff's impairments (foot deformities).

## IV. **STANDARD FOR REVIEW OF THE COMMISSIONER'S DETERMINATION**

The Commissioner held that Jones was not under a disability within the meaning of the Social Security Act.  Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).  The Court's review of this decision is limited to determining whether there is substantial evidence in the administrative record to support the Commissioner's decision.  42 U.S.C. § 405(g); Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam); Hays v. Sullivan, 907 F.2d 1453 (4th Cir. 1990).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter, 993 F.2d at 34 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  Id. (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner has the duty to make findings of fact and

resolve conflicts in the evidence. <u>Hays</u>, 907 F.2d at 1453 (citing <u>King v. Califano</u>, 599 F.2d 597, 599 (4th Cir. 1979)).  The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. <u>Schweiker</u>, 795 F.2d at 345.  In reviewing for substantial evidence, the court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (citing <u>Hays</u>, 907 F.2d at 1456).   "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or on the Commissioner's designate, the ALJ)." <u>Craig</u>, 76 F.3d at 589 (quoting <u>Walker v. Bowen</u>, 834 F.2d 635, 640 (7th Cir. 1987)).  The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  The issue before this Court, therefore, is not whether Jones is disabled, but whether the Commissioner's finding that Jones is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. <u>See</u> <u>id.</u>; <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987) ("[A] factual finding by an [ALJ] . . . is not binding if it was reached by means of an improper standard or misapplication of law.").

13

## V. <u>ANALYSIS</u>

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the

> inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment[12] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 416.905(a); <u>see also</u> 42 U.S.C. § 423(d)(1)(a).  To meet this definition, the claimant must have a severe impairment which makes it impossible to do previous work or any other substantial gainful activity[13] that exists in the national economy.  20 C.F.R. § 416.905(a); <u>see also</u> 42 U.S.C. § 423(d)(2)(A).

### A. <u>Sequential Disability Analysis</u>

The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth at 20 C.F.R. § 416.920.  See <u>Hall v. Harris</u>, 658 F.2d 260, 264-65 (4th Cir. 1981).  Under this process, the ALJ must determine in sequence:

---

[12]A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

[13]"Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit.  20 C.F.R. § 416.910.

(1)   Whether the claimant is engaged in substantial gainful activity (i.e., whether the claimant is working).  If so, the claimant is <u>not</u> disabled and the inquiry is halted.

(2)   Whether the claimant has a severe impairment.  If not, the claimant is <u>not</u> disabled and the inquiry is halted.

(3)   Whether the impairment meets or equals the medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria.  If so, the claimant <u>is</u> disabled and the inquiry is halted.

(4)   Whether the impairment prevents the claimant from performing past relevant work.  If not, the claimant is <u>not</u> disabled and the inquiry is halted.

(5)   Whether the claimant is able to perform any other work considering both his residual functional capacity[14] and his vocational abilities.  If so, the claimant is <u>not</u> disabled.

In this case, the ALJ reached the fifth step of the sequence, at which point he determined that Jones was not disabled.  The ALJ first determined in step one that Jones had engaged in substantial

---

[14]"Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his impairment and any related symptoms (e.g., pain).  <u>See</u> 20 C.F.R. § 416.945(a)(1).

gainful employment subsequent to the relevant alleged onset date of
disability of November 29, 1999.  (R. 22, 27.)  The ALJ found that
she had engaged in such employment only for the first three months
of her work (August 2001 to October 2001), which was insufficient
to find that she was not disabled at step one of the analysis.  (R.
22, 27.)  The ALJ next found in step two that Jones had severe
impairments: diabetes mellitus, peripheral neuropathy and obesity.
(R. 22, 27.)  At step three, the ALJ found that Jones did not have
a severe impairment or combination of impairments to meet or
medically equal one of the impairments listed in Appendix 1,
Subpart P, Social Security Regulations No. 4.[15]  (R. 22, 27.)

Prior to steps four and five, the ALJ determined Plaintiff's
residual functional capacity ("RFC") upon consideration of the
medical evidence and testimony, including her testimony, the
findings of her treating and non-treating physicians, and the state
agency's disability determination rendered by a non-examining
physician.  (R. 22-25, 27.)  Based on the evidence as a whole, the
ALJ determined that Jones retained the RFC to lift and carry ten
pounds occasionally and five pounds more frequently.  (R. 24.)  The
ALJ found that Jones "can sit for eight hours, walk short distances

---

[15]As noted, <u>supra</u>, the ALJ found that Jones' anemia was not a
severe medical impairment because it was not a condition that
"imposed any limitations for at least 12 months."  (R. 22.)  Also,
while the ALJ determined that Jones' obesity was a severe medical
impairment, he found there was no evidence that her weight "results
in a loss of functioning to a degree that would meet or equal any
listed impairment."  (R. 22.)  <u>See also</u> Soc. Sec. Ruling 85-28.

at a time, and stand for brief periods for up to two hours a day," but that she should "avoid work around dangerous machinery" and that she "cannot operate foot controls." (R. 24, 26.) The ALJ also noted there were no manipulative limitations documented in the record. (R. 24.) Based on this RFC, the ALJ found that Jones could perform a significant range of sedentary work.[16] (R. 26.) Because of certain exertional and/or non-exertional limitations, however, the ALJ also found that Jones was not capable of doing the full range of sedentary work. (R. 26-27.)

In reaching a conclusion about Jones' RFC, the ALJ gave consideration to her testimony and statements regarding her impairments and their impact on her ability to work. (R. 22.) The ALJ found Jones' allegations regarding her limitations to be "not totally credible." (R. 24, 27.) In particular, the ALJ noted that Jones worked for seven months as a telemarketer, but he found she "stopped this job due to not taking her medication which resulted in a deterioration in her medical condition." (R. 25.) This finding was based in part on her "long history of noncompliance with medication," her having "declined surgery" on her toe, her

_____

[16]The ALJ defined sedentary work as work involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." (R. 26.) See also 20 C.F.R. § 404.1567(a). The ALJ also noted that while sedentary work involves sitting, "a certain amount of walking and standing is often necessary in carrying our job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." (R. 26.)

17

failure to "avail herself of social programs which assist indigent patients" and her failure to "go to clinics which charge on a sliding scale basis." (R. 24.)  The ALJ also considered that Jones was apparently "able to leave her home on a fairly regular basis" and that she was able to ambulate without the need for an assistive device. (R. 24.)  The ALJ also considered the medical opinions of the treating, examining and non-examining physicians, as statements from acceptable medical sources that "reflect judgments about the nature and severity of the impairments and resulting limitations." (R. 22, 27.)

Pursuant to Social Security Ruling 96-6p, the ALJ also considered the state agency findings of fact about the nature and severity of Jones' impairments, conducted by medical consultants who were also experts in Social Security disability programs, as the medical opinions of non-examining medical sources. (R. 25.) In its Residual Functional Capacity Assessment – Physical,[17] completed on September 13, 2002, the DDS found Jones was capable of performing a limited range of sedentary work. (R. 25, 190.)

---

[17]The Court notes there does not appear to be a comparable mental Residual Functional Capacity Assessment in the record. In any event, the ALJ considered Dr. Zuniega's medical evaluation that found Jones was not limited in her ability to follow instructions, to use a keyboard or to participate in job training – each of which requires cognitive abilities. (R. 204-05.) The only other mention of any mental limitations, other than Plaintiff's own testimony, was the statement of Dr. Grinkewitz in March 2001 that Plaintiff's pain could be severe enough to affect her concentration/memory and distractability on a daily basis. (R. 228.)

Specifically, the DDS found Jones was capable of standing/walking up to two hours and sitting up to six hours of an eight-hour workday, she could lift up to ten pounds occasionally and less than ten pounds frequently, without any push/pull limitations (including operation of hand/foot controls).  (R. 189.)  The DDS consultant noted his agreement with the previous RFC assessment from the March 28, 2001 ALJ decision, which found Jones could perform a limited range of sedentary work, with the option to alternate sitting and standing positions.  (R. 25, 44, 190.)  The ALJ here did not "fully concur" with the DDS's assessment because the "need for a sit/stand option" was refuted by the finding of another treating physician.  (R. 25.)  In any event, the ALJ determined that the DDS's analysis supported a finding that Jones can work.  (R. 25.)

The ALJ reviewed the medical records associated with Jones' hospitalization from February 26, 2002 to March 7, 2002.  (R. 23.)  The ALJ noted that in August 2001 Jones presented with "oozing and blackish discoloration" in her right great toe due to an infection, which was treated by Keflex[18] and referral to the Diabetic Institute.  (R. 23, 171.)  The ALJ found the next report of treatment for her diabetes mellitus was her hospital admission of February 26, 2002, in which she was diagnosed with osteomyelitis[19]

---

[18]Keflex is a trademark for the broad-spectrum antibiotic known as cephalexin.  Stedman's Medical Dictionary 321 (27th ed. 2000).

[19]Osteomyelitis is an inflammation of the bone marrow and adjacent bone.  Stedman's Medical Dictionary 1284 (27th ed. 2000).

of her right great toe.  (R. 23, 143-150, 166.)  The ALJ also reported that Plaintiff was not taking medication for the right toe ulcer for at least eight months prior to her hospitalization due to "financial reasons," however, there was also evidence that Plaintiff was employed during at least part of that time.  (R. 23-24.)  The ALJ noted that Plaintiff declined the advice of her physicians to amputate the toe, who believed the infection was not likely to be successfully treated by intravenous antibiotics, and she then was started on a six-week course of intravenous antibiotics that continued after her release on March 7, 2002.  (R. 24, 144-45.)  The ALJ noted that by May 8, 2002 there were no signs of infection, deep purulence (pus) or penetration to the bone.  (R. 23, 199.)  The ALJ also found that Plaintiff continued to be noncompliant with her medication.  (R. 23, 208, 210.)

The ALJ considered the medical opinion of Dr. Leah Zuniega, one of Plaintiff's treating physicians.  (R. 23, 204-05, 208-10.) On May 24, 2002, Dr. Zuniega stated that Plaintiff was not limited in her abilities to lift, sit, scoop, use a keyboard, see, reach, hear and follow instructions.  (R. 23, 204.)  Dr. Zuniega found Plaintiff was limited in her abilities to drive, bend and handle small objects, and she found severe restrictions on her abilities to climb, stand and walk.  (R. 23, 204.)  Dr. Zuniega stated that Plaintiff's impaired mobility prevented her from working and from looking for work, but she found no limits on her ability to

20

participate in job training or education.[20]   (R. 23, 205.)

The ALJ considered the medical opinion of Dr. Gerry Smith, a consultative physician for the Virginia Department of Rehabilitative Services ("VDRS"), who examined Jones on August 29, 2002.  (R. 23, 184-87.)  Dr. Smith stated that Plaintiff complained of "burning and tingling pain to both feet" that was "not a constant pain," but on the date of examination Plaintiff reported no pain in her feet.  (R. 23, 184-85.)  Dr. Smith noted that Plaintiff had some "mild difficulty" standing on one leg at a time, and on her heels, as well as with Romberg testing.[21]  (R. 23, 185.)  Dr. Smith reported discoloration of her right foot and right great toe, and noted a small circular ulcer underneath the toe, but there was no indication of purulent drainage and Plaintiff had a "fairly normal gait pattern" without benefit of any assistive devices.  (R. 23, 185.)   Dr. Smith diagnosed Plaintiff with a diabetic neuropathic ulcer and with diabetic peripheral neuropathy,

---

[20]The ALJ ultimately determined that, because of certain discrepancies and omissions in her records, Dr. Zuniega's opinion was "not dispositive of the issues in the case."  (R. 24.)  These include the ALJ's determination that the medical record did not support a finding that Plaintiff had any manipulative limitations and that Dr. Zuniega's own records were inconsistent as to Plaintiff's compliance with her medications.  (R. 24.)  In any event, the ALJ noted that the limitations and restrictions found by Dr. Zuniega still allowed Plaintiff to perform a sedentary job pursuant to Social Security Ruling 96-9p.  (R. 24.)

[21]Romberg testing indicates a loss of proprioceptive control. The test is positive when the subject, standing with eyes open and "feet approximated," feels increasingly unsteady upon closing the eyes.  Stedman's Medical Dictionary 1640 (27th ed. 2000).

including lower extremity sensory impairments secondary to diabetic peripheral neuropathy.  (R. 186.)

The ALJ considered the medical opinion of Dr. John Chacko, a general surgeon, who evaluated Jones on October 29, 2002.  (R. 23, 196-97.)  Dr. Chacko stated that Plaintiff had neuropathy of both lower extremities, including moderately severe swelling of the right leg, due to an ulcer that was being treated by Dr. Grinkewitz, and mild swelling of the left leg.  (R. 23, 196.)  Dr. Chacko diagnosed Plaintiff with lymphedema[22] of both lower extremities, that was "possibly congenital in origin."  (R. 23, 196.)  His treatment called for compression stockings for both legs, but, because Plaintiff stated she could not afford them, he recommended that she buy "ace bandages," apply them to both legs and return for follow up in three months.  (R. 197.)

The ALJ considered records from Dr. Peter Grinkewitz, a podiatrist, who treated Plaintiff's diabetic neuropathy in both feet and ulcerous right great toe between June 2000 and August 2003.  (R. 23, 143-44, 149-50, 198-203, 228-32.)  Dr. Grinkewitz opined that Plaintiff had a "permanent" disability, that she was unable to "walk or stand for even short periods" and that she was "at risk of limb amputation."  (R. 23, 203.)  As discussed supra,

---

[22]Lymphedema is "swelling . . . as a result of obstruction of lymphatic vessels or lymph nodes and the accumulation of large amounts of lymph in the affected region."  Stedman's Medical Dictionary 1040 (27th ed. 2000).

the ALJ determined that Dr. Grinkewitz's "opinion of disability is not [to be] given great weight."  (R. 25.)

Based on the above, the ALJ found in step four that Jones was not capable of performing her past relevant work as a supply clerk and supply technician.  (R. 25.)  It is the claimant who bears the initial burden of proving the existence of a disability.  42 U.S.C. § 423(d)(5); 20 C.F.R. § 416.912; Smith v. Califano, 592 F.2d 1235, 1236 (4th Cir. 1979).  Once the claimant has established at step four that she cannot do any of her past relevant work because of severe impairment(s), the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy which the claimant could perform consistent with her RFC, age, education, and past work experience.  Hunter, 993 F.2d at 35; Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found that Jones was a "younger individual between the ages of 18 and 44."  (R. 25, 27.)  The ALJ found that transferability of skills was not an issue because Jones has more than a high school education.  (R. 25, 27.)  According to testimony given by a vocational expert, in response to a hypothetical question posed by the ALJ, a significant number of jobs exist in the local and national economies for an individual with Jones' age, educational background, work experience, and RFC as determined by the ALJ.  (R. 25-27.)  These jobs include order clerk (2,600 positions locally, 376,000 nationally), telephone operator (1,200

positions locally, 325,000 nationally) and information clerk (7,000 positions locally, 988,000 nationally).  (R. 26-27, 254.)  Having found a significant number of jobs to which Plaintiff is capable of making a successful adjustment, the ALJ concluded at step five of the analysis that Jones was therefore not disabled.  (R. 26-27.)

B. **Additional Evidence Submitted to the Appeals Council**

Jones submitted additional evidence to the Appeals Council that she had not submitted to the ALJ.  The Court finds that it is required to consider this evidence in deciding whether substantial evidence supports the ALJ's decision.  As explained infra, the Court finds that this additional evidence does not necessitate a remand pursuant to sentences four and six of 42 U.S.C. § 405(g) because it does not create a conflict or call into doubt decisions grounded in prior medical reports; there is no reasonable possibility that it would have changed the outcome.

The Appeals Council must consider evidence submitted to it when deciding whether to grant review if the "additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Wilkins v. Secretary Dept. of Health & Human Svs., 953 F.2d 93, 95-96 (4th Cir. 1991) (en banc).  These requirements correspond to requirements discussed supra, Section III.B., for the Court to remand under the sixth sentence of § 405(g), except that there is no requirement to show "good cause" for not presenting the evidence earlier. See Wilkins,

953 F.2d at 96 n.3.

In the Fourth Circuit, where the Appeals Court considers the new evidence, but denies review, a reviewing court must consider all evidence in the record, including this new evidence that was never before the ALJ, to determine if substantial evidence supports the Commissioner's decision.  Bryant v. Barnhart, No. 6:04cv17, 2005 WL 1804423, at *3 (W.D. Va. 2005)(citing Wilkins, 953 F.2d at 96); see also Riley v. Apfel, 88 F. Supp. 2d 572, 577 (W.D. Va. 2000)(discussing the Fourth Circuit's en banc decision in Wilkins, 953 F.2d 93, and a later contrary Fourth Circuit panel decision, Smith v. Chater, 99 F.3d 635, 638 n.5 (4th Cir. 1996), that relied on United States v. Carlo Bianchi & Co., 373 U.S. 709, 714-15 (1963), for the proposition that "in determining whether the ALJ's decision is supported by substantial evidence, a district court cannot consider evidence which was not presented to the ALJ.")).

In this case, the Appeals Council, in addressing Jones' August 19, 2003 request for review of the ALJ's decision, considered the additional evidence, but denied review using boilerplate language that it "considered . . . the additional evidence" and found that "this information does not provide a basis for changing the Administrative Law Judge's decision." (R. 6.)  The Appeals Council did not explain why the new evidence did not render the ALJ's findings "contrary to the weight of the evidence." 20 C.F.R. §§ 404.970(b), 416.1470(b).

The Fourth Circuit's mandate in Wilkins to review any new evidence as part of the whole record is problematic given that the Commissioner and not the reviewing court must determine the appropriate weight to be afforded such new evidence. See Bryant, 2005 WL 1804423, at *4. Unless the ALJ "explicitly indicate[s] the weight given to all the relevant evidence" to assist the reviewing court in determining if factual findings are supported by substantial evidence, the reviewing court should hesitate to determine that his decision is supported by substantial evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984). Because the Appeals Council denied review, the ALJ's decision is the "final decision" of the Commissioner subject to judicial review. Riley, 88 F. Supp. 2d at 579; 20 C.F.R. § 404.981. Thus, the Court is left attempting to perform judicial review where the Appeals Council made no findings on the new evidence in its denial and where the ALJ did not have the benefit of considering this new evidence. Id. at 579-80.

Whether the Appeals Council is obligated to make specific findings about such new evidence is unclear; circuit courts and courts within the Fourth Circuit disagree. See, e.g., Bryant, 2005 WL 1804423, at *4; Riley, 88 F. Supp. 2d at 580. Assigning the duty of fact finding to an administrative agency, discussed supra, Section IV, is supported by the strong policy reasons of permitting the reviewing court to benefit from the agency's

expertise.   See Riley, 88 F. Supp. 2d at 580.   Regardless of
whether the Appeals Council is obligated to provide findings of
fact about new evidence, its failure to do so, leaves open the
possibility of remand to require the Commissioner to explicitly
consider the additional evidence in certain circumstances. Bryant,
2005 WL 1804423, at *5.

This Court agrees that the standard for when remand is proper
is as articulated in Bryant: the court reviews the ALJ's decision
in light of the new evidence, which the ALJ never had an
opportunity to consider, and determines whether this new evidence
"creates a 'conflict,' is 'contradictory,' or 'calls into doubt any
decision grounded in the prior medical reports.'" Bryant, 2005 WL
1804423, at *5 (citations omitted).   On remand, the Commissioner
must weigh and resolve the conflicting evidence. Id.  As the Bryant
court noted, such a standard for remand in light of new evidence is
consistent with the definitions of new, material, and temporally-
related evidence in Wilkins – cumulative or duplicative evidence
and evidence that has no reasonable possibility of changing the
outcome will not meet the test for remand.   Bryant, 2005 WL
1804423, at *5.

In this case, Jones submitted five additional documents by
facsimile on December 31, 2003 and January 1, 2004, each of which
was considered by the Appeals Council in reviewing her appeal.  (R.
9, 223-33.)  Exhibit one includes Jones' statement of contentions,

27

which discusses the additional evidence submitted to the Appeals
Council and takes issue with aspects of the ALJ's decision.  (R.
223-25.)  In this exhibit, Jones makes reference to a "second
amputation" procedure on her right great toe, but does not refer to
any specific medical records to document this procedure.[23]  (R.
225.)  Exhibit two includes a letter dated November 7, 2003, from
her pastor, Dr. Leo Whitaker, explaining the nature of her
volunteer work answering the telephone at the church on Tuesdays
for a few hours between April 8, 2003 and June 10, 2003.  (R. 226.)
Exhibit two also includes an undated and unsigned statement from
Jones about the medical caregivers she visited for treatment of her
diabetes.  (R. 227.)   Exhibit three is a pain questionnaire
completed by Dr. Grinkewitz from March 15, 2001.  (R. 228.)   He
diagnosed Jones with diabetic neuropathy that caused chronic pain;
the pain was precipitated by prolonged standing and walking and he
noted that she was incapacitated from two to four hours a day and
needed daily bed rest and elevation of her legs.  (R. 228.)   Dr.
Grinkewitz further opined that medication only partially relieved
her pain and that the pain could become severe enough to effect her
concentration, memory and distractability on a daily basis.  (R.
228.)   Exhibit four consists of medical records from Plaintiff's

---

[23]Jones also referred to a second "emergency amputation[]"
performed by Dr. Grinkewitz on September 8, 2003.  See Pl.'s Mem.
at 1, 3.   Again, there are no documents in the record to
substantiate this claim.

28

first surgery on her right great toe on August 2, 2003.  (R. 229-232.)   On that date, over twenty-eight months after Dr. Grinkewitz's original diagnosis, he performed a partial amputation of the toe, which was "swollen and cocked up with distal ulcer" that "began to drain with bone exposed."  (R. 229.)  The surgery apparently went well and Dr. Grinkewitz noted no complications; Jones was released from Maryview Hospital on August 4, 2003.  (R. 231-32.)   The fifth exhibit was Dr. Zuniega's June 30, 2003 prescription of a quad cane for Plaintiff.  (R. 233.)

The Court finds that the five exhibits submitted to the Appeals Council were not previously in the administrative record. The Appeals Council's boilerplate language stated that it had "considered . . . the [additional evidence]" in denying review of Jones' case.  (R. 6.)  The Court finds that some of the exhibits relate to the period before the date of the ALJ's hearing date (May 13, 2003), but all relate to the period preceding the ALJ's decision (August 19, 2003).[24]   Nevertheless, the Court is not persuaded that any of this additional evidence is sufficient to warrant a remand pursuant to sentence four of 42 U.S.C. § 405(g).

As to exhibit one, this summarizes Plaintiff's contentions as to errors by the ALJ, along with supporting arguments, but the

_____

[24]There is a brief mention that Jones, in December 2003, tried to obtain her records from therapy at the Diabetes Institute in the "early 1990's," but those records allegedly were "disposed of." (R. 227.)  In any event, the medical data cited therein appears to relate to February 27, 2002 and August 4, 2003.  (R. 227.)

Court finds that the evidence referred to is not new or is cumulative of other evidence already in the record.  (R. 223-25.)

As to exhibit two, the letter from Dr. Whitaker and Plaintiff's subjective statement about her diabetes caregivers are not new because they are cumulative of other information in the record.  The limited scope of Plaintiff's volunteer work at her church is described in the record.  (R. 24-25, 250-51.)  Moreover, Plaintiff's diabetes treatment is also present in the record, including treatment at Maryview Medical Center (R. 141-67, 229-32) and at Portsmouth Community Health Center (R. 168-81, 207-10).

As to exhibit three, the opinion of Dr. Grinkewitz about Plaintiff's "painful diabetic neuropathy," the Court finds that while this information is material to Plaintiff's medical condition, it is also cumulative and therefore not new.  (R. 228.) Even though the "Pain Questionnaire" completed by Dr. Grinkewitz on March 14, 2001 was apparently not presented to the ALJ, the information is implicit in Dr. Grinkewitz's own progress notes from December 1998 through April 2003.[25]  (R. 198-200, 202-03, 206). Indeed, as noted infra, the ALJ must have considered this

---

[25]Plaintiff stated in her DDS Pain Questionnaire on April 26, 2002 that Dr. Grinkewitz prescribed the medication, Neurontin sometime in "1998/1999."  (R. 124.)  She testified at the ALJ hearing on May 13, 2003 that she was not taking Neurontin because it was "expensive" and she "can't afford [it]."  (R. 247.) Neurontin is the trademark for the anticonvulsant medication gabapentin, used in the treatment of epilepsy and neuropathic pain. http:www.drugs.com/cons/Neurontin.html.

information when rejecting Dr. Grinkewitz's opinion from March 18, 2003 that Plaintiff was "permanently disabled because she cannot stand or walk for even short periods." (R. 25, 203.) The Court notes that even if this information was new, there is no reasonable possibility it would have changed the outcome in her case because the ALJ had ample opportunity to consider Dr. Grinkewitz's notes and records reflecting his views on her pain.

As to exhibit four, the medical records about the first surgery on Plaintiff's toe on August 2, 2003, the Court finds that this information is material to Plaintiff's medical condition and is new, considering that the ALJ issued his decision barely two weeks after the surgery. Nevertheless, the Court finds there is not a reasonable possibility that the information would have changed the outcome of her case because the medical records indicate that Plaintiff's condition worsened only in the few weeks prior to her surgery. (R. 229.) More importantly, the record reflects that her physicians repeatedly recommended surgery as the best course of treatment for at least seven months prior to Plaintiff agreeing to have the surgery, which reflects that the surgery was almost inevitable.[26] (R. 143-44, 169.) Following the surgery, Plaintiff continued to see Dr. Grinkewitz for continued debridement of the toe (R. 198), but the records do not indicate

---

[26] The Court notes that in a progress report dated as late as October 29, 2002, Dr. Grinkewitz noted that Plaintiff declined "any intervention" on the toe. (R. 198.)

any treatment that would create a conflict or call into doubt decisions grounded in prior medical reports.  (R. 198.)

As to exhibit five, Dr. Zuniega's June 30, 2003 prescription for a walking cane, the Court finds this information is cumulative and therefore not new.  This prescription is consistent with Dr. Zuniega's "Medical Evaluation" on May 24, 2002, in which she noted that Plaintiff's diabetic foot ulcer caused "impaired mobility and balance" and "severely restricted" her abilities to stand and walk. (R. 204-05.)  The Plaintiff testified at the hearing that she was considering asking her doctor about getting a cane, which she apparently did a month and half later.  (R. 247.)  There is no question that this information was considered by the ALJ in reaching his decision.  (R. 25.)  The Court also notes that even if the information were considered new, there is no reasonable possibility that it would have changed the outcome in her case because the type of work for which the ALJ determined she was suited did not require standing or walking for more than brief periods.  (R. 27, 254.)

Based on the foregoing, the Court FINDS that the additional evidence presented to the Appeals Council does not necessitate a remand pursuant to sentence four of 42 U.S.C. § 405(g).  This additional evidence did not create a conflict or call into doubt decisions grounded in prior medical reports; there is no reasonable possibility that it would have changed the outcome.

32

C. **Determination of Plaintiff's RFC by the ALJ**

The Court construes Plaintiff to argue that the ALJ erred in concluding she had the RFC to perform a significant range of sedentary work.

1. **Medical Opinion of Plaintiff's Treating Physician**

The Court construes Plaintiff as claiming that the ALJ erred in determining that the opinions of her treating physician, Dr. Grinkewitz, were "not [to be] given great weight," and in relying on the DDS's medical analysis to support a finding that Plaintiff "can work." (R. 25.) Plaintiff claims that the ALJ failed to give controlling weight to treating source medical opinions in that he improperly "utiliz[ed] a partial statement [by Dr. Grinkewitz] as a basis of consideration" and that he "failed to give weight to any of [Dr. Grinkewitz's] prognosis opinions." Pl.'s Mem. at 1-2. Referring to the text of Dr. Grinkewitz's assessment, Plaintiff asserts that Dr. Grinkewitz "never gave [sic] medical opinion that [Jones] did not have the ability to walk or stand, nor is there evidence suggesting [Jones] is lacking these abilities." See Plt.'s Motion to Amend Summary Judgment Order, discussed in note 7, supra. Essentially, Plaintiff is arguing that the ALJ inconsistently applied Dr. Grinkewitz's medical findings. The Court is not persuaded by this argument.

a. **Grinkewitz Opinion Not Entitled to Controlling Weight**

A treating physician's opinion as to the existence, nature, or

severity of a claimant's impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such an opinion should be given "significantly less weight" when it is not supported by clinical evidence or is not consistent with other evidence of record. Craig, 76 F.3d at 590. The ALJ has discretion to give less weight to the opinion of a treating physician where there exists persuasive contrary evidence. Hunter, 993 F.2d at 35.

A treating physician's opinion as to a claimant's residual functional capacity, however, is not entitled to be given controlling weight or special significance. Opinions on such issues are not "medical opinions," but rather opinions "reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(e). Current regulations distinguish between an RFC, which only the Commissioner can determine and a "medical source statement about what the claimant can still do." See 20 C.F.R. §§ 404.1513(b)(6), 404.1546; Soc. Sec. Ruling 96-5p. Given that such medical source statements are not technically "medical opinions," by definition they can never be given "controlling" weight. See Soc. Sec. Ruling 96-5p. As such, the ultimate question of whether a claimant is disabled under the Act is an issue reserved to the Commissioner, and

therefore a statement that the claimant is "disabled" or "unable to work" may never be accorded controlling weight or any special significance.  Id.  Nevertheless, since they are medical opinions of a treating physician, such opinions must still be evaluated and may still be entitled to great weight.

In this case, on March 18, 2003 Dr. Grinkewitz expressed the opinion that Jones was unable to work and that the restrictions on her employment were "permanent" in that she "cannot walk or stand for short periods [sic] at risk for limb amputation." (R. 23, 25, 203.)  Also, on April 24, 2003, Dr. Grinkewitz opined that Jones was "permanently disabled" in providing a verification of disability for Jones to obtain a "half fare" pass from the Hampton Roads Transit authority.  (R. 206.)  The Court interprets these as an expression of Dr. Grinkewitz's opinion that is impermissibly directed to the ultimate issue of whether Jones was disabled under the Act or not.  The Court therefore FINDS that there is substantial evidence in the administrative record to support the ALJ's finding that Dr. Grinkewitz's opinion was on an issue reserved to the Commissioner, and that the ALJ's decision not to give Dr. Grinkewitz's opinion controlling weight was therefore reached based upon a correct application of the relevant law.

### b. **Grinkewitz Opinion Not Entitled to Great Weight**

Although a statement by a treating physician that the claimant is "disabled" or "unable to work" may never be accorded controlling

weight or any special significance,

> opinions from any medical source on issues
> reserved to the Commissioner must never be
> ignored. The [ALJ] is required to evaluate
> all evidence in the case record that may have
> a bearing on the determination or decision of
> disability, including opinions from medical
> sources about issues reserved to the
> Commissioner.

Soc. Sec. Ruling 96-5p; <u>see also</u> 20 C.F.R. §§ 404.1527(e)(1),

416.927(e)(1) (a treating source opinion on the issue of disability

is not determinative of disabled status). Therefore, once the ALJ

determines that a treating physician's medical opinion is not

deserving of controlling weight, the following factors must be

<u>considered</u> to determine the appropriate weight, if any, to which

the opinion is entitled:

> (1) the length of treatment and frequency of examination;

> (2) the nature and extent of the treatment relationship;

> (3) the opinion's support by medical evidence;

> (4) the opinion's consistency with the record as a whole;
> and

> (5) the treating physician's specialization.

20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5). None of these

factors may be omitted or disregarded by the ALJ in weighing the

value of a treating physician's medical opinion. <u>See</u> <u>Newton v.</u>

<u>Apfel</u>, 209 F.3d 448, 456 (5th Cir. 2000) (electing to join other

federal courts in requiring ALJ to consider § 404.1527(d) factors

before declining to give weight to treating physician's opinion and

36

noting that ALJ should consider factors on remand); <u>Winford v. Chater</u>, 917 F. Supp. 398, 401 (E.D. Va. 1996) ("[I]f an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he <u>must</u> then <u>consider</u> the weight to be given to the physician's opinion by applying the five factors identified in the regulation . . . .") (emphasis added).[27]  In addition, the ALJ must consider any other factors that tend to support or contradict the opinion, but only if brought to his attention.[28]  <u>See</u> 20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6).

In this case, the ALJ's order indicates consideration of all the pertinent factors in considering Dr. Grinkewitz's opinion as to Plaintiff's disability status, in accordance with 20 C.F.R. §§ 404.1527 and 416.927.  (R. 22, 27.)  While it is true that the ALJ does not discuss each factor individually, the Court finds the record is adequate to conclude that the factors were indeed considered by the ALJ in reaching his determination that Dr.

---

[27]The Court was unable to locate any published opinion by the Court of Appeals for the Fourth Circuit standing for this proposition.  <u>See</u> 4th Cir. R. 36(c) ("In the absence of unusual circumstances, this Court will not cite an unpublished disposition in any of its published opinions or unpublished dispositions."). The Court notes the existence, however, of <u>Burch v. Apfel</u>, 9 Fed. Appx. 255, 259, 2001 WL 574634 (4th Cir. 2001) (per curiam) (stating that the ALJ "must consider" the factors set forth in 20 C.F.R. § 404.1527(d) when declining to give controlling weight to the opinion of a treating physician).

[28]For example, the medical source's degree of understanding of Social Security disability programs and evidentiary requirements, or the medical source's familiarity with the other information in the claimant's case.  20 C.F.R. §§ 404.1527(d)(6), 416.927(d)(6).

Grinkewitz's opinion was not entitled to "great weight." (R. 25.)

The ALJ must have considered the first two factors, length of treatment and frequency of examination, based on the records from the various physicians and dates of treatment discussed in the report. (R. 22-25.) The ALJ must have considered the third and fourth factors, whether the opinion is supported by medical evidence and consistency with the record as a whole, given that Dr. Grinkewitz's opinion that Plaintiff "cannot stand or walk for even short periods" did not comport with Plaintiff's own testimony that she "can . . . walk as far as I need to . . . ."[29] (R. 24-25, 243, 247-28, 251. The ALJ also considered Dr. Zuniega's opinion, supra, that Plaintiff was not limited in her ability to sit, which is not inconsistent with a finding that she can perform sedentary work. The ALJ must have also considered the inconsistency between Dr. Grinkewitz's opinion that Plaintiff cannot work and the ALJ's own determination that Plaintiff's noncompliance with her medication was the only reason she was unable to perform sedentary work. (R. 25.) The Court notes that the ALJ recognized Dr. Grinkewitz as a podiatrist, and thus the ALJ must have considered his

---

[29]During the ALJ hearing Plaintiff testified that: "It's difficult to walk [but] I can walk for a distance and be fine, but at some point I'm going to fall over into a wall or a door or something." (R. 247.) Plaintiff also testified that: "Well, I can walk, and I walk as far as I need to, it'll take me a long time . . . [b]ut usually a block or a block and a half." (R. 248.) She also testified that she can walk four blocks to her church to perform her volunteer work and that she is able to go shopping on occasion with her sister. (R. 243-44, 251.)

specialization under the fifth factor set forth in §§ 404.1527(d) and 416.927(d).  Plaintiff raised no other relevant factors for consideration by the ALJ, nor is it apparent from the record that the ALJ was aware of any other relevant factors that he should have considered in evaluating Dr. Grinkewitz's opinion.

Having reviewed the entire administrative record, the Court finds that there is substantial evidence to support the ALJ's decision not to adopt Dr. Grinkewitz's opinions as to Plaintiff's disability.  The record contains persuasive evidence that is inconsistent with the opinions expressed by Dr. Grinkewitz.

The Court therefore FINDS that there is substantial evidence in the administrative record to support the ALJ's finding that Dr. Grinkewitz's opinion was not entitled to great weight, and that the ALJ's determination of the weight given to Dr. Grinkewitz's opinion was reached based upon a correct application of the relevant law.

## 2. State Agency Disability Determination

Plaintiff also claims that the RFC assessment completed by the DDS physician "goes against" Dr. Grinkewitz's interpretation of the medical reports.  Pl.'s Mem. at 3.  Specifically, Plaintiff refers to Dr. Grinkewitz's interpretation of an electromyography report from June 15, 2000 (R. 141-42) that she asserts reveals "severe polyneuropathy affecting right and left legs and feet" and further asserts that the DDS physician ignores the "podiatry consultation as noted on the discharge summary."  Id.

39

The ALJ stated that he considered but did not "fully concur" with the medical assessment made by the DDS medical consultant.[30] (R. 25.)  Nevertheless, the ALJ found that it supported a finding that Jones can still work.  The Court construes this to find that the ALJ assigned only "some weight" to the DDS assessment.

The state agency's disability determination (Physical Residual Functional Capacity Assessment) was completed by a DDS medical consultant on September 13, 2002.  (R. 188-195.)  This assessment was based on the medical records from Plaintiff's hospitalization from February 26 through March 7, 2002, as well as physical examinations on July 7, 2002 – each of which included treatment by Dr. Grinkewitz, as well as a consultative examination on August 29, 2002 by Dr. Smith, the VDRS medical consultant.  (R. 143-50, 184-87, 190, 199.)  Specifically, the DDS found Jones could stand or walk (with normal breaks) up to two hours of an eight-hour workday and she could sit (with normal breaks) up to six hours of an eight-hour workday.  (R. 189.)  The DDS also found Jones could lift up to ten pounds occasionally and less than ten pounds frequently, with no limits on her push/pull ability (including operation of hand/foot controls).  (R. 189.)  This is consistent with the definition of sedentary work.  See 20 C.F.R. § 417.967(a); Soc.

---

[30]The DDS medical consultants are experts in Social Security disability programs, and are properly considered as the medical opinions of non-examining physicians.  See Soc. Sec. Ruling 96-5p.

Sec. Ruling 83-10.

The primary medical problem found by the DDS was associated with the infection on her right great toe, as a result of a diabetic neuropathic ulcer. (R. 190.) Due to this condition, the DDS found that Jones could never crawl or climb stairs using her right foot, and that she could only occasionally balance, stoop, kneel and crouch with her right foot. (R. 191.) No such limits were placed on her left foot. (R. 191.) There were no manipulative, visual or communicative limitations found by the DDS, and the only environmental limitation was a restriction on working with machinery and at heights. (R. 191-93.) Further, the DDS noted that Plaintiff was able to "ambulate[] independently without any assistive devices" and that she had "normal coordination" and "normal standing." (R. 194.)

Plaintiff's assertions to the contrary notwithstanding, the DDS consultant did consider Dr. Grinkewitz's records, including his July 11, 2002 progress notes describing Plaintiff as a "[d]iabetic with [an] ulcerated Charcot[31] deformed great toe" and which specifically found "[n]o deep purulence or bone involvement noted." (R. 190, 199.) The DDS consultant also considered Dr. Grinkewitz's treatment of Plaintiff during her hospitalization in 2002 in which

---

[31]Charcot is a neuropathic joint disease "caused by diminished proprioceptive sensation, with gradual destruction of the joint by repeated subliminal injury, commonly associated with . . . diabetic neuropathy." Stedman's Medical Dictionary 936 (27th ed. 2000).

a bone scan noted "increased activity in all three phases involving the great right toe" that was "thought to be somewhat osteomyelitis." (R. 144, 190.) In addition, the DDS considered the August 29, 2002 assessment by the VDRS physician, Dr. Smith, in which he concurred with the diagnosis of a diabetic neuropathic ulcer of the right great toe, but noted that Plaintiff stated "she does not have pain in her feet" and that during his examination she had no "acute or severe pain . . . no active drainage . . . [n]o indication of any purulent drainage," but she did exhibit "decreased pinprick sensation and stocking distribution of both legs typical of peripheral neuropathy." (R. 184-87, 190.) The Court finds that while the DDS did not specifically mention the results of the electromyography performed on June 15, 2000, upon referral of Dr. Grinkewitz (R. 141-42), those results are implicit in Dr. Grinkewitz's subsequent progress notes and records in which he diagnosed Plaintiff with "severe diabetic neuropathy" that he deemed "painful." (R. 199, 203, 228). The DDS also noted Dr. Smith's observations that Plaintiff exhibited normal strength in both upper and lower extremities, normal coordination and her gait was "fairly normal" (without the assistance of any walking devices). (R. 184-85, 190.)

The DDS further noted that Jones was noncompliant during her treatment (for failure to take medication "for her diabetes, or any other condition"). (R. 190.) The DDS also noted that Jones had

42

repeatedly disregarded her physicians' advice for amputation of the toe, and she repeatedly refused to allow invasive treatment against the advice of her treating physicians "despite all efforts to explain to her that it was the most common and recommended course [of treatment]." (R. 144, 190, 194.) This noncompliance had also been noted by Dr. Smith in August 2002. (R. 184.)

The DDS consultant noted that his RFC assessment was "consistent with" the earlier ALJ's decision of March 28, 2001, which had concluded Jones could perform a limited range of sedentary work, with a sit/stand option. (R. 25, 44, 190.) The ALJ's decision of August 19, 2003 did not "fully concur" with the DDS's assessment because the "need for a sit/stand option is refuted by Dr. Zuniega's opinion that [Jones'] ability to sit is not limited."[32] (R. 25.) In any event, the ALJ determined the DDS's analysis supported a finding that Jones can work. (R. 25.)

The Court therefore FINDS that there is substantial evidence in the administrative record to support the ALJ's finding that the DDS medical consultant's opinion was entitled to some weight, and that the ALJ's determination of the weight given to that opinion was reached based upon a correct application of the relevant law.

### 3. ALJ's Consideration of All Plaintiff's Impairments

Plaintiff also argues that the ALJ did not consider her foot

---

[32]The Court notes that Dr. Zuniega's name was inadvertently misspelled by the ALJ. (R. 233.) Dr. Zuniega found no limitations on Plaintiff's ability to sit. (R. 204.)

deformities in assessing her RFC.  Plt.'s Resp. Mem. at 5-6.

The Court finds that the ALJ must have considered Plaintiff's foot deformities in evaluating her RFC because he recognized certain limitations on her ability to work that are directly attributable to her foot, namely, an inability to walk great distances (though he found she could walk short distances), operate foot controls (due to the pain in her right foot) and work around dangerous machinery (as a result of her problems with balance). (R. 24.)  These limitations were included in the hypothetical questions posed during the ALJ's examination of the Vocational Expert at the hearing, discussed <u>supra</u>.  (R. 25, 253-55.)

Based on the foregoing, the Court FINDS that there is substantial evidence in the administrative record to support the ALJ's decision that Plaintiff had the RFC for a significant range of sedentary work, and that this decision was therefore reached based upon a correct application of the relevant law.

## D. <u>Plaintiff's Testimony Regarding Her Impairments</u>

The Court has construed Plaintiff's pleadings as claiming that the ALJ failed to make a proper credibility determination as to her testimony and complaints regarding her symptoms, including pain, and their limiting effects.

Credibility determinations are reserved to the ALJ.  <u>See</u> <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990); <u>Hammond v. Heckler</u>, 765 F.2d 424, 426 (4th Cir. 1985); <u>King v. Califano</u>, 599

F.2d 597, 599 (4th Cir. 1979); <u>see</u> <u>also</u> <u>Craig</u>, 76 F.3d at 589

("Where conflicting evidence allows reasonable minds to differ as

to whether a claimant is disabled, the responsibility for that

decision falls on the [Commissioner] (or the [Commissioner's]

designate, the ALJ).") (quoting <u>Walker</u>, 834 F.2d at 640).   The

Court's analysis is therefore restricted to determining whether the

ALJ's decision is supported by substantial evidence and whether he

employed the correct legal standard.   <u>See</u> <u>Craig</u>, 76 F.3d at 589.

Where a claimant's statements about the intensity,

persistence, or functionally limiting effects of her symptoms,

including pain, suggest a greater degree of impairment than can be

supported by the objective medical evidence alone, the ALJ must

make a finding on the credibility of the claimant's statements

based on the whole record.   Soc. Sec. Ruling 96-7p.   Where the ALJ

makes a negative credibility determination, he must specify the

reasons for his decision and the evidence informing it.   <u>Hammond v.</u>

<u>Heckler</u>, 765 F.2d 424, 426 (4th Cir. 1985).

> It is not sufficient to make a conclusory
> statement that "the [claimant's] allegations
> have been considered" or that "the allegations
> are (or are not) credible."   It is also not
> enough for the [ALJ] simply to recite the
> factors that are described in the regulations
> for evaluating symptoms.   The determination or
> decision must contain specific reasons for the
> finding on credibility, supported by the
> evidence in the case record, and must be
> sufficiently specific to make clear to the
> [claimant] and any subsequent reviewers the
> weight that the [ALJ] gave to the [claimant]'s
> statements and the reason for that weight.

Soc. Sec. Ruling 96-7p.

In the present case, the ALJ did appropriately support his negative credibility determination. In finding that Plaintiff's testimony was not "fully credible," the ALJ specified the reasons for his decision and discussed the evidence informing the decision. (R. 24-25.) The ALJ acknowledged the existence of Plaintiff's impairments, but the ALJ was not persuaded that these impairments were debilitating to the extent alleged by Plaintiff. (R. 24-25.) The ALJ specifically noted that, insofar as Plaintiff can ambulate without the use of any assistive devices and can leave her home for hours at a time, her conditions did not prevent her from being able to work. (R. 24.) In addition, the ALJ noted Plaintiff's noncompliance with medication and the advice of her physicians as documented throughout her medical records. (R. 24-25.)

In evaluating a claimant's statements regarding pain or other symptoms, the ALJ must follow a two-step process: (1) determine whether there is objective medical evidence showing the existence of a medical impairment or impairments which could reasonably be expected to produce the pain or other symptoms alleged; and (2) if there is such evidence, evaluate the intensity and persistence of the claimant's symptoms, including pain, and the extent to which they affect her ability to work. Soc. Sec. Ruling 96-7p. In conducting the second step of the analysis, using all available evidence, the ALJ is required to make a credibility determination

as to the claimant's statements regarding the intensity, persistence, or functionally limiting effects of her symptoms whenever the claimant's statements "are not substantiated by the objective medical evidence." Soc. Sec. Ruling 96-7p; see also 20 C.F.R. § 404.1529(c)(4).

The ALJ considered objective medical evidence and found that Plaintiff "has impairments that can reasonably be expected to produce the pain and limitations alleged,"(R. 24.) The ALJ did find that Plaintiff has several severe impairments involving diabetes mellitus, peripheral neuropathy, and obesity. (R. 22.) The ALJ acknowledged Plaintiff's symptoms, including that she has "painful neuropathy and her balance is poor," but not to the extent alleged. (R. 24-25.) Contrary to Plaintiff's argument, the ALJ did consider her diabetic neuropathy, which she testified was her "biggest problem," but the ALJ found her claims that she cannot work did not comport with some of her activities and abilities. (R. 18, 223, 245.) The ALJ specifically noted that Plaintiff was able to "leave her home on a fairly regular basis for hours at a time," and identified activities such as walking to church and attending bible study as well as going out to buy or look for food – all without the use of any assistive devices.[33] (R. 24.)

_____

[33]The Court notes that the ALJ's opinion could be interpreted as stating that Plaintiff walked to church every day, even though she testified that she only did this on a weekly basis. (R. 24, 251.) Nevertheless, the Court views the ALJ's opinion as only indicating examples of Plaintiff's activities, which included, by

The ALJ considered medical evidence from August 2001 in which treating physicians made observations and objective findings inconsistent with Plaintiff's complaints about limitations on her ability to work.  (R. 23-24.)  Bearing in mind the scope of its analysis, the Court finds that discrepancies between Plaintiff's testimony and the opinions of her treating physicians provide a sufficient basis for the ALJ's credibility determination.

Dr. Zuniega, a treating physician, stated on May 24, 2002 that Plaintiff was not limited in her ability to lift, sit, stoop, see, reach, hear, use a keyboard and follow instructions.  (R. 204.) While Dr. Zuniega did find postural limitations on Plaintiff's abilities to climb, balance, kneel, crouch or crawl, the ALJ noted that these activities "do not usually erode the occupational base for a full range of unskilled sedentary work," and, in any event, he found that Plaintiff could perform a significant range of sedentary work.  (R. 24-26, 204.)  Dr. Zuniega also stated that Plaintiff was limited in her ability to handle small objects, but the ALJ found no records of any "abnormalities of the upper extremities."  (R. 24, 204.)  Dr. Grinkewitz, a podiatrist, opined that Plaintiff cannot stand or walk for even short periods of time, but Plaintiff's testimony that she can and does walk several blocks to church, that she can go shopping for food, and that she does so

---

Plaintiff's own testimony, her going out shopping for food and attending weekly bible study.  (R. 24.)

without benefit of any assistive device, contradicts this finding. (R. 24-25.)  Dr. Smith, a VDRS medical consultant, stated that as of August 29, 2002 Plaintiff was able to ambulate effectively without benefit of any cane or other assistive device, but noted that "it is quite likely that her impairment and difficulties from the diabetic peripheral neuropathy will progress with time."  (R. 186.)   Finally, Dr. Chacko, a general surgeon, considered Plaintiff's neuropathy of both lower extremities, but prescribed a moderate course of treatment including the use of graduated compression stockings or something similar.  (R. 23, 196-97.)

The ALJ also noted that Plaintiff had not been fully compliant with her treatment and medications and that she had rejected her physician's advice to allow surgery on her right great toe while she was hospitalized in February - March 2002.  (R. 23-25.)  Dr. Zuniega, indicated on May 24, 2002 that Plaintiff had been compliant with her treatment and prescribed medicines, but her office report from the same date indicated that Plaintiff was not compliant.  (R. 24, 205, 208.)  The Court notes that Plaintiff ultimately elected to have the surgery in August 2003, but she apparently continued to be noncompliant during the interim period. (R. 198, 208-10, 229-30.)  The ALJ also noted that while Plaintiff claimed her indigent status as the cause for failure to take medication for her illnesses, she was not regularly taking her medication even while she was employed in August through October

2001, she did not indicate use of over-the-counter pain medication,[34] and "until recently" she did not avail herself of social programs and clinics that are known to assist indigent patients and that "charge on a sliding scale basis."[35]   (R. 24.) Ultimately, the ALJ found that Plaintiff's diabetes mellitus "can be expected to respond to medication and proper diet," but only to the extent Plaintiff is compliant.   (R. 24.)

Accordingly, the Court FINDS that the ALJ employed the correct legal standard in evaluating the credibility of Plaintiff's testimony and subjective complaints of pain, and his credibility determination is supported by substantial evidence.

### E. __Hypothetical Questions Posed to the Vocational Expert__

The Court also construes Jones as complaining that the hypothetical questions posed by the ALJ to the Vocational Expert failed to consider all of her impairments (i.e., her foot deformities).   Plt.'s Resp. Mem. at 5-6.

---

[34]Plaintiff has argued in response that Dr. Grinkewitz's prescription of Neurontin, see note 25, supra, refutes the ALJ's concerns, but the Court notes that Neurontin appears to be a prescription medication and thus not available over-the-counter.

[35]Plaintiff noted that the ALJ did not define the term "until recently" and argued that certain records she provided demonstrate that she received indigent medical services "dating back to July 2001," when she was treated at Portsmouth Community Health Center. Pl.'s Mem. at 4.  Portsmouth Community Health Center, according to Plaintiff, "charges a sliding fee scale." (R. 224.)  Nevertheless, Plaintiff has failed to reconcile the fact that, by her own admission, she worked for seven months between August 2001 and February 2002, yet she claimed that she was unable to afford medication during this same time period.  (R. 24, 143, 239-40.)

The ALJ posed to the Vocational Expert certain hypothetical questions concerning an "individual who is 41 years of age, has a high school education" and whose past experience included work as a supply clerk and supply technician (both semi-skilled, requiring medium exertion) and telemarketer (semi-skilled and sedentary). (R. 26, 253-54.)  In the first hypothetical, the individual described by the ALJ was limited to performing sedentary work, was limited to walking short distances, was unable to walk or stand around dangerous machinery and could not operate foot controls. (R. 254.)  The Vocational Expert responded that such an individual could obtain a job as an order clerk, telephone operator or an information clerk, and that these jobs exist in significant numbers in the national and local economies.  (R. 26, 254.)  In the second hypothetical, the Vocational Expert opined that there would be no impact on employability if the individual also experiences "mild to moderate pain which does not significantly interfere with the ability to maintain concentration or attend to task."  (R. 254-55.) Finally, in the third hypothetical the Vocational Expert stated that there would be an impact on employability if the individual instead suffered from moderate to severe pain, on a frequent basis, that resulted in "an inability to maintain concentration or attend to tasks for prolonged periods of time, or to maintain one's self at a work station."  (R. 255.)

As discussed _supra_, the ALJ must have considered Plaintiff's

foot deformities and associated limitations on her ability to work in framing the hypothetical questions posed to the Vocational Expert insofar as he specifically included her inability to walk great distances (due to the pain in her legs and feet), to operate foot controls (due to the limitations in her feet) and to work around dangerous machinery (in recognition of her problems with balance).  (R. 24.)   The Court recognizes that Plaintiff may not agree with the weight that the ALJ placed on the Vocational Expert's testimony, but the Court does find the ALJ properly considered her deformities.[36]

The ALJ had sufficient grounds for determining Jones' impairments and their effect on her ability to work, including his determination of the appropriate weight to give Dr. Grinkewitz's opinion and the state agency's RFC assessment, as discussed <u>supra</u>.

As such, the Vocational Expert's testimony was responsive to a series of hypothetical question which fairly described Jones' limitations to the extent the ALJ found them to be credible.   See Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989).   The Court

---

[36]The Court notes that the Vocational Expert was examined by Jones' attorney to establish that the jobs identified by the Vocational Expert, and her previous job as a telemarketer, were sedentary in nature and required an employee who could consistently record accurate information.  (R. 255-56.)  The ALJ's opinion considered this line of reasoning in noting that Jones' previous employment as a telemarketer was a sedentary job, but finding that the failure to take her medication "resulted in a deterioration of her medical condition" and that this was the cause of her inability to function as a telemarketer.  (R. 25.)

therefore FINDS there is substantial evidence in the administrative record to support the ALJ's reliance on the Vocational Expert's testimony as evidence of Jones' alternative employability, and that the ALJ's formulation of the hypothetical questions and decision to rely upon the Vocational Expert's response were reached based upon a correct application of the relevant law.

### F. Conclusion

This _pro se_ Plaintiff moved for the Court to allow expert testimony to explain the medical evidence in the record, which the Court interpreted as a request for an evidentiary hearing. Even if such a hearing were necessary, which it is not, this Court has no jurisdiction to conduct evidentiary hearings under the Social Security Act. Accordingly, the Court recommends that Plaintiff's motion be DENIED. Plaintiff also moved for leave to amend her motion for summary judgment, to correct a scrivener's error, and for leave to amend her complaint, to add a request for post-judgment relief, both of which were unopposed by Defendant. Insofar as the Court has considered the revised language in the motion for summary judgment and has recognized that the award of any post-judgment costs to Plaintiff is not ripe unless and until Plaintiff receives a favorable decision here, the Court recommends that Plaintiff's motions be GRANTED. Further, this Court has construed Plaintiff's pleadings, which included an additional exhibit that was not previously submitted to the ALJ, as seeking

prejudgment remand.  The Court FINDS that the exhibit was not new and material, and therefore did not justify a prejudgment remand pursuant to sentence four of 42 U.S.C. § 405(g).

Plaintiff also submitted additional evidence to the Appeals Council that she had not submitted to the ALJ.  Because the Appeals Council considered the new evidence in denying review, the Fourth Circuit requires that the Court consider this evidence in deciding whether substantial evidence supports the ALJ's decision.  The additional evidence, concerning Plaintiff's condition before and after the ALJ's decision, includes objective medical evidence that the Court deemed material, but was not new or was cumulative. Therefore, the Court FINDS that remand pursuant to sentence four of 42 U.S.C. § 405(g) is not necessary because the additional evidence does not create a conflict or call into doubt decisions grounded in prior medical reports, and there is no reasonable probability that it would have changed the outcome.

The Court FINDS the ALJ's determination that the opinion of Dr. Grinkewitz was not entitled to great weight was supported by substantial evidence and based upon a correct application of the relevant law, as was the ALJ's determination of the proper weight to be accorded the state agency medical consultant's opinion.  The Court FINDS that the ALJ's determination that Plaintiff had the residual functional capacity to perform a significant range of sedentary work was supported by substantial evidence and based upon

54

a correct application of the relevant law.  The Court FINDS that the ALJ employed the correct legal standard in evaluating the credibility of Plaintiff's testimony and his decision that the testimony was not fully credible was supported by substantial evidence.  The Court also FINDS that the ALJ's hypothetical questions to the Vocational Expert were proper, as was his reliance on the Vocational Expert's responses.

## VI.  RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiff's pro se motion for expert testimony be DENIED, and that her motions to amend her motion for summary judgment and to amend her complaint be GRANTED.  The Court further recommends that, insofar as Plaintiff's pro se pleadings may be construed as a motion for prejudgment remand, such motion be DENIED, that the final decision of the Commissioner be UPHELD, that Defendant's motion for summary judgment be GRANTED, and that Plaintiff's motion for summary judgment be DENIED.  Accordingly, the Court recommends that the case be DISMISSED.

## VII. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of

this report to the objecting party, <u>see</u> 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.  A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof.  <u>See</u> Fed. R. Civ. P. 72(b).

2.  A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

　　　　　　　　　　　　　　　　　　　　　/s/
_____　F. Bradford Stillman
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

Norfolk, Virginia
January 11, 2006

### CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed

this date to the following:

Melodie A. Jones
3128 Glasgow Street
Portsmouth, Virginia 23707-6468

Mark A. Exley, Esq.
Office of the United States Attorney
World Trade Center
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510

Elizabeth H. Paret, Clerk

By: _____

Deputy Clerk

January    , 2006